**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMANDA MARQUEZ, a Student with** | ) | |
| **a Disability, and GEORGE & JENNIFER** | ) | |
| **MARQUEZ,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No: 16-cv-1485** |
| | ) | |
| **BOARD OF EDUCATION OF** | ) | **Judge _____** |
| **TOWNSHIP HIGH SCHOOL DISTRICT 214** | ) | |
| | ) | **Magistrate _____** |
| **&** | ) | |
| | ) | |
| **ILLINOIS STATE BOARD OF EDUCATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**NOW COME** the PLAINTIFFS, AMANDA MARQUEZ, a Student with a Disability, and GEORGE & JENNIFER MARQUEZ, against DEFENDANT BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 214 ("D214" or "District") and DEFENDANT ILLINOIS STATE BOARD OF EDUCATION ("ISBE"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC § 1401 *et seq.,* and state as follows:

1. This cause of action arises from the efforts of the Parents, George & Jennifer Marquez, to enforce their rights and the rights of their daughter, Amanda Marquez, to a free appropriate public education ("FAPE"). During all times pertinent, Amanda has assigned her educational rights to her Parents who have exercised them on her behalf.

2. This action is brought to partially appeal the administrative decision issued by the state appointed Impartial Hearing Officer ("IHO") Sabrina Wilkens-Brown, who issued the Final Determination and Order ("D&O) and dated it September 28, 2015. It was sent by certified mail that day and uploaded into SEDS, the ISBE website, the next day. The D&O followed a seven day special education due process hearing pursuant IDEA, 20 USC § 1401 *et seq.*

3. This action is also brought to partially appeal the D&O, and for the Plaintiffs to recover costs, including reasonable attorneys' fees, as the prevailing party in the administrative proceeding below.

## I. INTRODUCTION

4. Amanda M., is a charming, hard working,18 year old girl currently in her fifth year in high school and considered a senior, in another public school district[1] other than the Defendant District here. While at D214, Amanda was considered very motivated and well-liked by her teachers and peers. She is a brain cancer survivor who had been diagnosed with *Medulloblastoma,* a type of cancer, for which she underwent brain surgery of her cerebellum in 2006 when she was 9 years old, leaving her with cerebral cognitive affective syndrome ("CCAS").[2]

---

[1]  The Student currently attends Palatine Township High School District 211, Palatine, Illinois and resides with her Mother within the boundaries of District 211. The Parents still own a house within the boundaries of T.H.S.District 214. Both locations are within Cook Co., IL., in the 1st App. Ct. Dist.

[2]. The cerebellum is involved in fine motor control, higher-order cognition, and emotional affect. In 1998, the notion of CCAS was developed by Dr. J.D. Schmahmann, a neuroscientist, who described these functions as being commonly affected by brain surgery on the cerebellum in his peer reviewed paper, "The cerebellar cognitive affective syndrome" in *Brain* 1998; 121: 561-79. The functions affected are all involved in neuropsychological aspects of educational performance. Levisohn, et al, "Neuropsychological

5.  After brain surgery, Amanda experienced temporary cerebral mutism, a condition occurring to 25% of children who have brain surgery for cerebral cancer. The cerebral mutism lasted for about 4 months, caused regression which further delayed her language and cognitive development, and was accompanied by right upper extremity weakness (hemiparesis).

6.  Amanda also experienced temporary aphasia and ataxia, and their residual dysfunctional effects, on the right side of her body. Also after surgery, Amanda underwent 7 weeks of radiation therapy, then 1.5 years of chemotherapy which was completed in 2008. Both of these post-operative therapies had further adverse effects on her functional abilities for up to 7 years later, including residual right hemiparesis.

7.  The Student has been in special education since she returned to elementary school after surgery, and her educational record showed she had experienced *Medulloblastoma* with complications from cerebellar mutism, aka "posterior fossa syndrome," a known medical condition with severe neuropsychological effects on educational functioning.

**D214 Apprised of Multiple Suspected Disabilities upon Entry to D214**

8.  In the fall of 2011, Amanda first attended Wheeling H.S. ("WHS") in D214 as a freshman and continued there through her freshman (2011-2012), sophomore (2012-2013) and junior years (2013-2014). The Student was constructively dismissed from WHS during the fall of her senior (2014-2015) school year. However, the District claimed she voluntarily withdrew, even though it conducted an Individualized Education Program

---

consequences of cerebellar tumour resection in children, Cerebellar cognitive affective syndrome in a paediatric population."

("IEP") Meeting without the Parents or Amanda later in that school year which developed a program at WHS for Amanda for the duration of that school year.

9. When first entering WHS, Amanda's IEP from her previous school, Holmes Middle School, in a previous district, apprised the WHS staff of her known areas of suspected disabilities. The Student's pediatrician, Dr. Nelson, also explained the medical history and status to the D214 school nurse at that time. The Parents cooperated with D214 in its initial, perfunctory evaluation and IEP development procedures, and were complimented by the District staff for their cooperativeness.[3]

10. Upon the D214's receipt of this information, it had notice of clear signs of her suspected disabilities, esp. in the form of the following areas that needed evaluation, since first entering WHS.

a.) The Student exhibited and still exhibits an orthopedic impairment that is primarily manifested educationally as an inability to write with her dominant (right) hand, as very slow, laborious, and deliberate printing with her non-dominant (left) hand, and as a difficulty with balance, coordination, mobility, dexterity, strength, stamina, and peripheral neuropathy. As a result of her brain cancer and treatment, Amanda has early onset of osteoporosis and is at high risk of falling due to her balance issues, her lack of normal reflexes and reactions needed to prevent or minimize falls. A fall could lead to more serious complications, such as a concussion, should she hit her head, esp. since a

---

[3]  The Mother, J.M., is a former certified general education teacher who taught private school briefly over 8 years ago, but was never trained in special education. She has told D214 that she needs visual presentation of material to understand content, and has needed help in understanding the currently used abbreviations and acronyms in special education which were unknown to her, like FBA and BIP.

small area of bone is missing from the base of her skull. Prior to entry into D214, her last complete occupational therapy ("OT") evaluation at school with normed, objective testing in late 2007 had shown OT deficits, and the outlines of her functional impairments could be readily observed at WHS in D214, such as her head tilt and staggered walk.[4] Here OT deficits exacerbate those she otherwise has in written expression and cognitive impairments due to damage to her brain from surgery.

b.) The Student had and still has deficits in expressive, receptive and pragmatic language that severely restricts her post-secondary transition to college, employment and independent living. When the Parents had Amanda's speech and language ("SL") tested by Janet S. Marsden-Johnson, Ph.D. CCC-SLP, the SL Evaluation Report dated 7/28/15 measured severe regression in SL areas. Comparison with previous testing showed that regression had increased over her years at the D214, due to the provision of severely inadequate SL service minutes for Amanda. PE464-71.[5] The Student had and still has difficulty understanding what is conveyed in normal conversation with peers and teachers when it is not concrete and specific to her immediate social situation, or when abstract concepts are expressed.[6] Dr. Marsden-Johnson testified at hearing about the importance

---

[4] This deficit greatly taxed Amanda's ability to produce the volume of written work required in high school, esp. as those demands increased over the years. When writing was required, it quickly exhausted her academic endurance on challenging mental tasks, such as writing composition. This made direct, one-on-one OT services crucial for her expressed goal of attending college. Educators typically address these types of needs with OT and physical therapy ("PT") services, and handwriting & touch typing instruction, where required.

[5] Plaintiffs refer to their exhibits by Bates stamped number in the lower right-hand corner of each page, as "PE__," and to the D214 exhibits as "SDE____."

[6] The Student still cannot effectively engage in job interviews, though she has attempted many such interviews, and she cannot easily engage with same age peers whose language is frequently allusory, indirect and conceptual.

5

of her recommendation for one weekly SL therapy session, to focus on improving processing, higher level and semantic language skills. She also recommended a second session per week to focus on incorporating the assistive technology ("AT") supports into a language based program to improve Amanda's written language skills and reading skills, and for her social/pragmatic skills, an appropriate small group for her to participate in also on a weekly basis. PE470-71.

c.) The Student had and still has reading and written expression difficulties. The Parents' Lindamood-Bell Learning Potential Evaluation Report of May 18, 2015 measured her compared to her peers at the 2 percentile in reading rate, 9 percentile in reading accuracy, below 1 percentile in reading fluency, and the 5 percentile in reading comprehension. Since LMB tutoring began, the LMB progress evaluations have shown slow, but steady, progress in reading from that limited LMB tutoring. LMB tutoring must finish addressing reading before it can address Amanda's written expression, which is further compromised by the dysfunction of her dominant (right) hand.[7]

d.) The Student was and still is immature for her age and regularly displays a lack of inhibition and an inappropriateness in her behavior. She freely giggles inappropriately, frequently acting childishly and well below her age level, in stark contrast to the behavior typical of her chronological peers who notice Amanda's speech deficits in social groups. Dr. Marsden-Johnson testified that college peers would not tolerate her immature

---

[7]  The interrelated nature of Amanda's multiple deficits makes recommendations and ongoing services for those deficits interdependent at times, so on-going progress reports are key in understanding compensatory relief required for Amanda as her status changes.

language, causing any college experience to be "horrible" for Amanda without the needed SL therapy recommended in her evaluation report.

11. These deficits are consistent with the symptoms commonly found in children with CCAS after brain cancer surgery and treatment. In addition to the medical records provided to the District, medical personnel confirmed to D214 in 2012 in writing that Amanda had cerebellar mutism, aka *posterior fosse* syndrome.

12. The Parents were diligent in transmitting reports to D214, noting any changes in Amanda's condition in a timely matter. The Parents were quite open with D214 about Amanda's medical history, and communicated with the District staff that some areas could be affected up to 7 years after treatment, like her impaired hearing. An example is when Amanda was observed "crying at home," and the Parents sent emails to District staff over a period of years, which described the frustrations that Amanda exhibited.

**No Full & Individualized Evaluation pursuant to Child Find**

13. Instead of conducting a thorough evaluation upon Amanda's first attendance in D214, it did a few routine screenings, and designated her eligible under the "Other Health Impaired" ("OHI") category, and simply ignored Amanda's unique educational needs. Much later, Traumatic Brain Injury ("TBI") was added to Amanda's IEP as an eligibility category at the Parents' insistence, but this was not accompanied by any changes in evaluation of Amanda by the District. In fact, D214 never conducted any evaluation of Amanda's motor abilities.

14. Since D214 failed to provide the legally required notice to the Parents regarding its proposed evaluations and programming, the Parents were unaware of the critical,

technical facts of D214's failures regarding Amanda. The Parents were unaware of the true severity of Amanda's OT, reading and writing deficits, Amanda's need for direct, one-on-one OT services and specialized instruction in reading and writing, the inadequacy of D214's services and programs to address those needs. Importantly, the Parents were also unaware of the D214 custom and practice of limiting OT services and not informing Parents of the true severity of OT-PT motor deficits, like Amanda's.

15. Around November 2013, Amanda's emotional problems confused the Parents. Not knowing exactly what to do after trying to work with D214 unsuccessfully, the Parents filed an initial state complaint with the ISBE.

16. Testing by the Parents in December 2014 showed Amanda's IEP was insufficient to meet her needs. (Much later, the ISBE finished investigating the Parents' initial state complaint, and found D214 violations in the implementation of her IEP.)   In January of 2014, D214 misunderstandings of Amanda's behavior mounted. This led to a disciplinary incident in which Amanda immaturely copied work not knowing that would be construed as plagerism by D214. Although D214 ultimately decided not to discipline Amanda, this incident upset Amanda's emotional ability to study and sparked parental scrutiny of the District's responsiveness to Amanda's disabilities. The mounting dispute with the District resulted in what the Parents believed to be a constructive expulsion of Amanda.

17. While asserting Amanda had withdrawn, the District nevertheless asserted jurisdiction over Amanda by unilaterally developing an IEP for Amanda without her or the Parents' participation. That IEP placed her in a segregated, self-contained classroom without the required services or specially designed instruction in reading or written expression.

18. The refusal of D214 to reinstate Amanda led to the Parents to consider seeking refuge in a neighboring school district.

19. In January of 2015, unable to obtain re-entry of Amanda in D214, one of the Parents then rented an apartment in nearby District 211, and Amanda began attending the high school in that district instead of D214.

20. By these actions, D214 failed Amanda M. and violated its obligations under IDEA through a persistent pattern of profound incompetence and willful neglect. At all times, the District failed to assess fully Amanda's expressive, receptive and pragmatic language disorders; reading and written expression deficits; her motor deficits as to balance, mobility, dexterity, strength and stamina; and her post-secondary transition needs for college, employment and independent living.

21. The District compounded its errors by neglecting to provide Amanda's Parents with proper information required by IDEA about the District's proposals and refusals in the required PWN. Such PWN would have included advance notice of the reasons the District refused to provide direct, one-on-one services in occupational therapy and a reading and writing program responsive to her unique needs, or why it segregated Amanda from her regular education peers in that final D214 IEP.

22. Subsequently, the Parents filed for a due process hearing and presented their concerns to an IHO. She ordered partial relief in the form of reimbursement for 3 of the 4 private evaluations Amanda had obtained or needed, plus limited OT services and limited reading and writing tutoring with outside providers as compensatory education.

23. This limited relief, however, has not placed Amanda where she would have been if the District had initially evaluated her fully and provided the Parent's with timely information to alert them to problems early in Amanda's high school career. Instead, D214 IEPs repeatedly reassured the Parents in IEPs and otherwise that Amanda did not have reading problems and that her motor deficits were being addressed by D214.

24. The Student is now 18 and in the 12th grade in the new district. She has lost the opportunity to acquire certain reading and academic skills, while facing a daunting challenge to overcome years of D214's neglect. Since the summer of 2015, the Parents have incurred over $15,000 in debt to fund the LMB tutoring that is helping Amanda slowly recover from D214's neglect of her needs, and D214 has been late at times in making payments as ordered by the D&O.

25. IDEA entitles her to receive, and obligates the D214 to provide, at a minimum: (a) compensatory services to help Amanda overcome its past neglect, (b) reimbursement for money spent to acquire privately the education services it was duty-bound to provide but did not, and (c) all litigation costs and attorneys fees. Yet, the D214 continues to neglect its duties by failing to provide that to which the Plaintiffs are entitled.

## II. PARTIES

26. Plaintiff Amanda M. ("Student") is 18 yrs. old. When she was a minor, she resided within the boundaries of the educational jurisdiction of the Township High School District 214 until after it refused to allow her re-entry. She is currently enrolled as a senior in nearby Palatine H.S. District 211, her new district. At all times pertinent, Amanda has been, and

continues to be, eligible to receive special education and related services pursuant to the IDEA.

27. Plaintiffs George and Jennifer Marquez are the Parents and Next Friends of Amanda, with authority to make educational decisions for Amanda by signed, written consent of Amanda. The Parents still own a home within the boundaries of D214.

28. Defendant D214 is a body corporate and politic as a public entity organized and existing pursuant to the Illinois School Code, 105 ILCS *511-1, et seq.* , with the capacity to be sued, receives federal funds from the United States Department of Education pursuant to the IDEA, and is required to provide a FAPE in the least restrictive environment to all children with disabilities while they reside within its educational boundaries.

29. Defendant ISBE is the state agency authorized and required to establish a procedure for resolving disputes between students, their parents, and local school districts, appoint IHOs for special education disputes known as due process hearings. It is the official custodian of the certified administrative record for due process special education hearings held under the IDEA. 20 USC § 1400, *et seq.*

**III. JURISDICTION & VENUE**

30. This is a civil action over which this Court has original jurisdiction under 28 USC § 1331 in that the action arises under IDEA, as amended, 20 USC § 1400 *et seq.* 20 USC §§ 1415(i)(2)(A). Section 1415(i)(2)(A) of the IDEA grants a party aggrieved by the findings and decision of a due process hearing the right to appeal the decision to a court of competent jurisdiction. Jurisdiction is expressly vested in this Court pursuant to 20

USC § 1415(i)(3)(A) and 28 USC § 1331. This Court has jurisdiction to hear pendent

state claims under the doctrine of supplemental jurisdiction set forth at 28 USC § 1367.

31. Venue is properly situated in this Court because the acts complained of occurred in,

and the parties reside in, or do business in, the County of Cook, State of Illinois, within

the Northern District of Illinois.

## IV. STATUTORY SCHEME UNDER THE IDEA

32. The IDEA, formerly known as the Education of All Handicapped Children Act, P.L.

94-142 ("the Act"), was adopted in 1975 to ensure a public school education for all

qualifying children with disabilities.

33. The Act was initially passed when large numbers of disabled children were not receiving

an appropriate education, and Congress found that "more than one-half of the children

with disabilities in the United States did not receive appropriate educational services that

would enable such children to have full equality of opportunity...1,000,000 of the

children with disabilities in the United States were excluded entirely from the public

school system and did not go through the educational process with their peers...there were

many children with disabilities throughout the United States participating in the regular

school programs whose disabilities prevented such children from having a successful

educational experience because their disabilities were undetected ... because of the lack

of adequate services within the public school system, families were often forced to find

services outside the public school system, often at great distance from their residence and

at their own expense." 20 USC § 1400 (c)(2)(B-E).

34. As a result, Congress adopted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 USC § 1400 (d).

35. Congress has repeatedly affirmed that all children with disabilities in the United States must be provided with a FAPE. 20 USC § 1414(d). The current regulations state at 34 CFR §300.1 that the "purposes of this part are--(a) To ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; (b) To ensure that the rights of children with disabilities and their parents are protected; (c) To assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities; and (d) To assess and ensure the effectiveness of efforts to educate children with disabilities." (Authority: 20 U.S.C. 1400(d)).

36. In Illinois, the programs and procedures to achieve state compliance with the IDEA are set forth in Article 14 of the Illinois School Code, 105 ILCS 5/14-1, *et seq*. Pursuant to those statutes, the State educational agency, ISBE, has established appropriate standards and rules which are set forth in Section 226 of the Illinois Administrative Code.

37. The IDEA is an entitlement statute that was enacted to help ensure that children with disabilities in the United States are provided with a FAPE in the "least restrictive environment." A FAPE is defined in IDEA as special education & related services provided at public expense, under public supervision & direction, without charge and

13

provided in conformity with the child's IEP. 20 USC § 1401(9); 34 CFR § 300.17, § 300.39.

**Child Find's Continuing Duty to Conduct Complete Evaluation of Suspected Disabilities**

38.  Child find is IDEA's affirmative, ongoing obligation of states and local districts to identify, locate, and evaluate all children who have or are suspected of having disabilities and need special education as a result of those disabilities. 34 CFR 300.111. Even children who are only suspected of having a disability, although they are progressing from grade to grade, are covered by the Child Find provision. 34 CFR 300.111(c ). School districts must ensure that the evaluation is sufficiently comprehensive to identify **all** of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified. 34 *CFR* 300.304(c)(6).

39. IDEA requires school districts to assess children "in all areas of suspected disability." 20 USC § 1414(b)(3)(B) (2006). The District has the responsibility to conduct a full and individual initial evaluation in accordance with pertinent regulations before the provision of special education and related services. *Id.* § 1414(a)(1)(A); 34 CFR 300.301(a). An evaluation must assess a student in all areas related to the suspected disability, 34 CFR 300.304(c )(4); and be sufficiently comprehensive to identify all of Amanda's special education and related services needs, whether or not linked to the disability category(ies) in which the child has been classified. 34 CFR 300.304(c )(6). The District's evaluation must be "comprehensive" to be appropriate. 34 CFR 300.304(c)(6). This means that the District must evaluate: (1) all areas of disability or suspected disability; (2) to the extent

necessary to identify the needs of the child to special education and related services. 34
CFR 300.305(a)(2)(i)(A).

40. To comply with this provision, the School District must determine the nature and extent
of the Amanda's disability and how to address Amanda's unique needs.

41. The District must conduct assessments necessary to allow the IEP Team to properly
determine the content of Student's IEP. 34 CFR 300.304(b)(1)(ii), 304(b)(7). The
assessments must be provided in the form most likely to yield accurate information on
what the student knows and can do academically, developmentally, and functionally,
unless it is clearly not feasible to provide or administer. 34 CFR 300.304(c )(1)(ii), (c)(3).

42. In developing an IEP, routine services, like OT consult services, are not always sufficient
to address the unique needs of Amanda. Moreover, the District has a statutory duty under
IDEA to try novel approaches to achieve more effective methods of special education.
*Timothy W. v. Rochester, N.H. School Dist.,* 875 F.2d 954, 961 (1 Cir.), *cert. denied,* .493
U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

**Procedural Safeguards are Important to Alert Parents**

43. Procedural safeguards under IDEA has its own section within the Act and its regulations.
P.L.108–446, § 615; 20 USC § 1415; 34 CFR Subpart E, § 300.500 *et seq*. To ensure the
district provides this entitlement fully, Parents must be informed before actions are taken
regarding their children with disabilities, and informed consent must be given. Since
special education is a specialty within education, as a practical matter, Parents need
information regarding the content of technical decisions before they are implemented.
Otherwise, they can't disagree or provide informed consent to district proposals.

44. The IDEA and the Illinois School Code provide parents with a right to a due process hearing concerning any matter related to the identification, evaluation or educational placement of a child with a disability. 20 USC § 1415(f)(3); 105 ILCS § 5/14-8.02a. If parents are the prevailing party in a due process hearing, they are entitled to reasonable attorneys' fees and costs pursuant to 20 USC § 1415(i)(3)(B), and are allowed the same for successful appeal of a hearing decision and for litigating fees.

**Court Review of Hearing Decision**

45. The District Court is to conduct its own review of the administrative record, but it reviews the legal conclusions *de novo. Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.,* 616 F.3d 632, 636 (7th Cir. 2010). The party challenging the outcome of the administrative proceedings bears the burden of proof. *.M.B. ex rel. Berns v. Hamilton Southeastern Schs.,* 668 F.3d 851, 860 (7th Cir. 2011). On issues of fact, "due weight" is accorded the hearing decision. *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. # 221,* 375 F.3d 603, 611-612 (7th Cir. 2004). The weight varies depending on whether additional evidence is admitted that the hearing officer did not have, and to the extent that the hearing decision is thorough and complete. The court decides the review based upon the predominance of the evidence before it. *Id.*

## V. PROCEDURAL HISTORY

46. On May 22, 2015, the Parents filed with the District Superintendent a *pro se* Request for Due Process Hearing ("Complaint"), dated May 17, 2015. The issues attached to that initial *pro se* Complaint were identical to the content of the Parents' previous ISBE Case

No. 2015-0358 Request for State Complaint Investigation ("State Complaint") dated 3/18/15.

47. On May 22, 2015, the ISBE State Complaint Investigator issued a Decision on said State Complaint, finding against the Petitioners on four of the issues alleged, but not ruling on the other issues directly alleged or implied therein.

48. On June 1, 2015, the District filed a Motion to Dismiss, alleging both insufficiency of the *pro se* Complaint and *res judicata* based on the then-issued State Complaint Decision.

49. On June 2, the Petitioners filed a Response to the Notice of Insufficiency contained within the District's Motion to Dismiss.

50. On June 6, 2015, the newly appointed Impartial Hearing Officer Sabrina Wilkins-Brown issued a Denial of the District's Motion to Dismiss, but ruled the Petitioners' complaint was insufficent and granted leave for the Petitioners' to file an Amended Complaint to cure the lack of clarity in the *pro se* Complaint which she found insufficient for ready adjudication.

51. On June 12, 2015, the Plaintiffs filed, through their new counsel, an Amended Complaint alleging three issues regarding procedural and substantive denials of FAPE.

52. First, the Petitioners' alleged D214 failed to conduct a full and individual evaluation at any time, though required by its Child Find duties under IDEA. Second, the Petitioners alleged D214 failed to develop an appropriate IEP to address Amanda's needs. Third, the Petitioners alleged D214 failed to provide the specific advance notice to the Parents, called Prior Written Notice ("PWN"), that IDEA requires to apprise them of the District's proposed plans to evaluate and to provide services in its proposed IEPs for Amanda prior

to implementation. The Plaintiffs requested compensatory education, and reimbursement for the cost of private educational services incurred to remediate Amanda's academic deficits so that she could successfully transition to post-secondary education, employment and independent living.

53. On June 22, 2015, the District filed its response to the amended due process complaint.

**OT Issues & D214's Misrepresentation & Withholding of Technical Information**

54. Crucially at hearing, the OT used by D214 from the North Suburban Special Education Cooperative ("NSSEO") to evaluate and provide OT for Amanda, admitted under oath to unilaterally withholding information and not informing the Parents of the true nature and extent of Student's severe OT deficits and the extensive OT services Amanda would require for her long-term recovery from brain cancer and post-operative treatment.

55. That NSSEO OT testified that she was following an established D214 practice to limit OT and physical therapy ("PT") services to students beyond a fixed amount, and that she intentionally followed that D214 practice, and she defended both her actions and the D214 practice. Based on that practice, rather than provide the IEP Team with the accurate motor level of Amanda's severe need and allowing the IEP Team to determine services at an IEP meeting, that OT recommended minimal consult services rather than direct, one-on-one OT services she knew Amanda needed.

56. Moreover, the NSSEO OT indicated that she deliberately misrepresented to the Parents Amanda's true motor needs, her professional judgment as an OT that Amanda needed extra, direct OT services, and the D214 practice that service limitation was based upon. Of course, the OT knew this would likely result in harm to Amanda, both immediately

while at D214, and during transition to post-secondary education and employment. And it has harmed Amanda by impeding the provision of FAPE.

57.  Several D214 IEPs had likewise misrepresented that Amanda's motor needs were being addressed by consult services, even though Amanda was unable to think & write simultaneously and was at risk for falls during that time. This further hid the severity of Amanda's motor deficits and the technical services needed to address them from the Parents.

**D&O and the Exhaustion of Administrative Remedies**

58. This misrepresentation and withholding of technical OT information is the most significant factual basis ignored in the D&O relative to the continuing duty to conduct a thorough and complete evaluation under Child Find. Clearly, hiding the needs and services required harmed Amanda by impeding the provision of FAPE.

59. On September 28, 2015, the IHO dated a D&O in which she found for the Petitioners on the issue of an inappropriate IEPs as each was a "dismal failure" with "virtually non existent OT/PT services." She ordered reimbursements of 3 of the 4 private, outside evaluations obtained at the Parent's expense. The D&O also ordered reimbursement of much, but not all, of the educational value in the relief requested, including direct OT services and tutoring with specialized reading and writing instruction.(See Final Determination and Order with   its Admitted Exhibit List & Clarification, attached as Exhibit 1.)

60. On October 7, 2015, the IHO issued a Clarification requested by the Petitioners in which she reiterated her error regarding exclusion of evidence outside a 2 year statute of limitations.

61. The Plaintiffs have thereby exhausted their administrative remedies below, and this partial appeal of the D&O has followed.

## VI. FACTUAL ALLEGATIONS

62. Beginning in the fall of 2011 when Amanda entered WHS, D214 could reasonably suspect Amanda's multiple disabilities resulting from her brain cancer surgery and post-operative treatment. It had clear signs of those multiple disabilities.

63. However, D214 has never conducted a full and individual evaluation to determine Amanda's unique educational needs and the services required to address Amanda's needs stemming from those multiple disabilities, including never conducting a motor abilities evaluation with normed, objective testing.

64. The Parents were unaware of the severity of Amanda's needs in OT, PT, SL and Transition, the extent of the services required to address those needs, or D214's failure to evaluate or program these areas properly until they obtained outside, private evaluations during 2015.

65. D214 never established the date of accrual of any statute of limitations that may serve as its affirmative defense and that may arguably apply to the issues in this case.

66. The D&O found that the "District failed to develop appropriate IEPs based upon relevant evaluations as it relates to Amanda's identified deficits related to reading and writing, balance, mobility and dexterity and transitional planning." D&O, p. 31.

67. These failures to conduct sufficient Child Find evaluations and to develop appropriate IEPs for Amanda began when Amanda entered WHS in the fall of 2011, and continued through the duration of the final IEP drafted by D214 for Amanda.

68. D214's failures to evaluate Amanda caused her harm by denying her the programming that would have been required to address her needs, and this impeded the child's right to a FAPE, and caused a deprivation of educational benefit. (34 CFR 300.513(a)(2)) (20 U.S.C. 1415(f)(3)(E)(ii)).

69. D214's failures to provide PWN regarding evaluations and IEPs to inform the parents prior to their implementation harmed the Parents by significantly impeding the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to their child. This was especially true as it regards the technical information regarding severity of Amanda's motor deficits, Amanda's reading problems, and the services and programming required to address them. *Id.*

## VII. NOTICE THAT ADDITIONAL EVIDENCE WILL BE REQUESTED

70. IDEA and related state law grant the Plaintiffs the right to present evidence and confront and cross examine witnesses at a due process hearing.

71. The IHO denied the Plaintiffs a hearing on the merits of their claims as it applies to most of Amanda's freshman and sophomore years at WHS.

72. The Plaintiffs wish to apprise the Court that they will be submitting a request for admission of additional evidence that is relevant to this partial appeal to supplement the administrative record.

73. The Plaintiffs will request admittance of the evidence improperly restricted at hearing to prove that the denials of evaluations, services and notices began from the time Amanda first entered the District school in the fall of 2011. This will include selected educational records showing D214 repeated claims that its OT/PT was meeting Amanda's motor needs, They will show Amanda physically could not keep up with handwriting at D214, whereas she could in her previous school. They will also show D214 admissions that she qualified for specialized instruction and that her reading scores declined as complexity of educational demands increased, yet D214 claimed no problems in her reading existed.

74. The Plaintiffs will also request admittance of evidence that was not available by the deadline for submission of evidence prior to hearing. This newly available evidence will primarily consist of progress reports, evaluations, and bills, as well as documents only disclosed by D214 after the hearing exhibit disclosure deadline for hearing evidence

75. It will include newly available evidence documenting harm from D214 failures, including any evidence of harm from Student's loss of GPA points and credits when she changed schools. It will include documentation of Amanda's improvements in her obvious physical impairments (pronounced head tilt, non use of dominant right hand, and staggered walk due to her neurologically impairment), such as that she can now walk in a straight line as a result of Parent-funded PT services left out of the D&O, but were recommended in the PT evaluation actually ordered reimbursed in the D&O.

76. It will also include related affidavits, esp. regarding the high travel costs incurred but not reimbursed by the D&O for the up to 70 mile roundtrips needed to take Amanda for

reimbursed services, and the recent shift to a closer provider to reduce costs and time

taken away from her current schooling.

## FIRST CLAIM FOR RELIEF
### PRODUCTION OF COPY OF CERTIFIED RECORD BY ISBE

77. Plaintiffs incorporate by reference Paragraphs 1 – 76 of the Plaintiffs' Complaint as if set

out in full here.

78. Plaintiffs here demand that the ISBE as the official custodian of the administrative record

in the above-cited ISBE Case No. 2015-0466, provide a timely copy of the certified

records to this honorable Court for use by the parties in this proceeding.

79. Plaintiffs demand that said copy be electronic and word-searchable in portable document

file ("pdf") format.

80. Plaintiffs here further demand that such certified copy be properly redacted to eliminate

any personally identifiable information of the Student and her Parents, to the extent

required by the F.R.C.P. and the LR-NDIL, so that record excerpts can be properly used

in filings in this case.

## SECOND CLAIM FOR RELIEF
### (PARTIAL APPEAL OF DUE PROCESS ORDER)

81. Plaintiffs repeat and reallege paragraphs 1 – 80 herein by reference as if set out in full.

82. Student is a party aggrieved by the D&O within the meaning of 20 USC § 1415(i)(2)(A).

83. However, the D&O contained numerous mistakes of law, and it should be partially

reversed due, *inter alia*, to the following errors.

84. The D&O erred in that the IHO strictly held that a 2 year statute of limitations applied in this matter, and did not recognize valid exceptions to the two year statute of limitations that were factually proven at hearing, including one specific example established by IDEA regulations[8] and Illinois Appellate precedent that was on point.[9] 20 *USC* § 1415(f)(3)(D)(i)-(ii); *accord* 34 *CFR* § 300.511(f)(1)-(2). The D214 Notice of Procedural Safeguards did not contain a statement that a 2 year statute of limitations applied.

85. The D&O erred by holding that early claims for violations of the IDEA were barred by the two year statute of limitations ending at the time of the original (May 17, 2015) or amended (June 12, 2015) due process complaints were filed. The IDEA statute of limitations requires a parent to request a due process hearing within two years of "the date the parent ... *knew or should have known* about the alleged action that forms the basis of the complaint." 20 USC § 1415(f)(3)(C); 34 *CFR* § 300.511(e) (emphasis added). The D&O failed to recognize the proven exceptions at hearing.

86. The D&O also erred by failing to explain or establish any date of accrual of the statute of limitations, and it failed to explain how the Parents' actually knew or could have known the technical knowledge needed to file a due process complaint, esp. as it relates to motor

---

[8]  34 CFR §300.504 "Procedural safeguards notice...(c) Contents. The procedural safeguards notice must include a full explanation of all of the procedural safeguards... relating to-- (12) Civil actions, including the time period in which to file those actions;..."

[9] *Jenna R.P. v. City of Chicago School District No. 229*, 2013 Ill. App. (1st) 112247, p.15-16. This Illinois precedent held that an exception to the two year statute of limitations applied where a district failed to state the two year period for filing an IDEA complaint in its Notice of Procedural Safeguards. The 1st App. Ct. Dist. held that the school district there failed to establish when the statute of limitations began to run. *Id.* Here, a D214 administrator admitted under oath that the Notice given the Parents did not state this two year period, nor did any document we given to the Parents. D214 also failed to establish the date when the statute of limitations began to run as a part of its affirmative defense.

and reading deficits not fully evaluated, properly programmed or properly noticed to the Parents.

87. These failures led the IHO to make the next mistake of law. The D&O wrongly applied limitations on full admission of educational records created prior to the assumed two year limitations period, and only allowed some for background or historical purposes, but none for their substantive weight. This excluded the educational record from most of Amanda's first two years in D214, and thereby denied the Plaintiffs their right to present evidence and confront and cross-examine witnesses as to claims prior to the 2 years from the date of the Amended Complaint.

88. The D&O denied that D214 had a continuing duty to conduct a full and individual evaluation to determine the educational needs and the services required to address them as part of its Child Find obligations, even though D214 never did so during the years Amanda attended a D214 school.[10]

**Misapplication of Standard for Violations of Procedural Safeguards**

89. The IHO misapplied the standard of harm required to prove that the technical violations of Procedural Safeguards were actionable. The D&O actually found D214 had made technical violations, yet the D&O claimed harm was not proven. However, this was incorrect because it was proven at hearing that the technical violations caused harm and were actionable, and therefore they require relief here.

---

[10] *D.K. v. Abington Sch. Dist.,* 696 F.3d 233, 249 (3d Cir. 2012) ("School districts have a continuing obligation under the IDEA and § 504 — called Child Find — to identify and evaluate all students who are *reasonably suspected* of having a disability under the statutes.") (emphasis in original) (internal quotation marks omitted).

**Errors in Calculation of Compensatory Education**

90. The D&O erred in apparently ordering compensatory education and services based upon a quantitative, rather than qualitative, approach.

91. The D&O failed to explain how the order for compensatory education was calculated. It also failed to explain how the order was reasonably calculated to provide educational benefits that likely would have accrued from the special education D214 should have supplied in the first place but did not.

92. This led to the next mistake of law. The D&O failed to order reimbursement of thousands of dollars in travel costs, thereby taxing the Parents for utilizing the very services for Amanda that were ordered reimbursed, thus violating the notion of a FAPE at no cost to parents.

93. The IHO also made many factual errors in the D&O and frequently failed to acknowledge or explain why the presented arguments and evidence contrary to its conclusions were not persuasive, amounting to clear error, especially as to facts regarding inadequate OT evaluation and service provision.

## THIRD CLAIM FOR RELIEF
## COSTS & FEES

94. Plaintiffs repeat and reallege paragraphs 1 through 93 herein by reference as if set out in full.

95. Through the administrative hearing below, Plaintiffs obtained much of the relief sought in their hearing request, *i.e.* many hours of OT services and many LMB tutoring sessions as compensatory educational services.

96. By virtue of obtaining such relief, the Plaintiffs are the prevailing party in this matter. The relief awarded constitutes substantial relief in relation to the main thrust of the Plaintiffs' case in that these services substantially assist Amanda in transitioning to post-secondary education, employment and independent living.

97. Plaintiffs are entitled to costs, including reasonable attorneys' fees, pursuant to 20 *USC* § 1415(i)(3)(B), as well as such costs and fees for this action. Further relief obtained in this action would increase the amounts in costs and fees the Court has discretion to award.

## PRAYER FOR RELIEF

**WHEREAS**, D214 has violated its Child Find evaluation duties to the Plaintiffs under IDEA by failing to conduct a full and individual evaluation of Amanda at any time, though it had been apprised of clear signs of Amanda's multiple, suspected disabilities needing evaluation from her entry into D214;

**WHEREAS**, D214 has a practice of not informing Parents of a Students' severe OT needs and required OT and PT services;

**WHEREAS**, D214's contracted OT for Amanda here has admitted under oath to following that practice in not recommending direct, one-on-one OT services for Amanda in her assessments though needed, and in deliberately not revealing to the Parents that D214 practice, Amanda's severe need, or the services required to address them during IEP Meetings or in required notices under IDEA;

**WHEREAS,** D214 has failed to provide transition services to improve the function to both of Amanda's hands and to improve her brain patterns to increase her alertness and enhance her skills in writing, reading, thinking, working and driving safely.

**THEREFORE**, Plaintiffs request judgment as follows:

1. Order the Defendant ISBE to produce the redacted, administrative record to the Court in one or more electronic, portable document files (pdf's) for use by the parties in this case.

2. Except to the extent that the relief requested below is inconsistent with the Final Decision and Order ("D&O") in this matter, affirm it.

3. Declare that the D&O erred in holding that D214's obligations under Child Find did not include a continuing duty to conduct a full and individualized evaluation of all areas of need due to the suspected disabilities of Amanda.

4. Declare that D214 denied Amanda a FAPE by failing, *inter alia*, to conduct a full and individual educational evaluation of suspected disabilities at any time, including for Speech and Language, and that the specific deficiencies in the child's IEPs are logically and legally caused by D214's failures to provide an appropriate evaluation of the child, esp. of her motor abilities.

5. Order D214 to reimburse Plaintiffs $750.00 for Amanda's Speech and Language Evaluation conducted by Janet S Marsden-Johnson, PhD. CCC SLP at Capable Kids of the North Shore, LLC.

6. Order reimbursement of the SL therapist of the Plaintiffs' choosing for more than 30 hours of SL services at the rate of $120.00 per hour as compensatory education to make up for the deficient SL evaluations and services provided by D214 to Amanda.

7. Declare that the Final Determination and Order erred in holding that D214 did not harm the Plaintiffs by its violation of the procedural safeguard of Prior Written Notice on multiple occasions regarding evaluations and IEPs proposed by D214.

28

8. Declare that D214 harmed the Plaintiffs by denying the student FAPE by failing, *inter alia*, on multiple occasions to provide the Plaintiffs with complete PWN, and by failing to provide Notice of Procedural Safeguards that alerted them to the 2 year statute of limitations for filing a complaint for a due process hearing, as specifically required by IDEA's Procedural Safeguards at Section 615.

9. Order D214 to pay for Student to receive 3 hours of transition planning consultation services from James F. Boyd, M.S., CRC, CVE, LCPC of The Evaluation Center, Westchester, IL, to assist Amanda with transition needs as reported in Amanda's Vocational Evaluation that Mr. Boyd conducted and that the D&O ordered reimbursed to discover her transition needs.

10. Order D214 to reimburse Plaintiffs for the provision of 30 hours of direct Physical Therapy services to improve Amanda's mastery of balance, mobility, coordination, strength, endurance, dexterity, alertness, and to decrease her risk of falling, as recommended by the PT Evaluation Report that was ordered reimbursed by the D&O.

11. Declare that the D&O erred in holding that claims for violations of the IDEA that occurred more than two years before filing of the Amended Complaint in the administrative hearing were barred by the statute of limitations.

12. Declare that IDEA's 2 year statute of limitations "shall not apply" in this case due to D214's conduct in misrepresenting and withholding technical information it was required to provide the Parents on Amanda's deficits and services required to address them, esp. regarding motor deficits.

13. Declare that D214 denied Student a FAPE for a total of 3 years and 9 months, commencing with the beginning of Amanda's freshman (2011-2012) year in late August of 2011 and ending at

the time that the D&O determined the period of deprivation of FAPE ended: at the end of her 2014-2015 school year.

14. Find & declare that the Due Process Order erred in ordering compensatory education and services for the claims actually adjudicated, apparently based upon a mechanical or quantitative, rather than qualitative, approach, without regard to whether Student will have achieved the educational benefits (i.e., mastery of reading, written expression, balance, mobility, coordination, strength, endurance, dexterity, alertness, and transitional planning) that she would have otherwise obtained had D214 provided her with a FAPE since fall of 2011.

15. Order D214 to pay reimbursement for Student to receive additional compensatory education through 40 more hours of OT services and 20 hours of EEG Biofeedback services as co-therapies from an OT and/or PT therapist(s) of the Plaintiffs' choosing until Amanda's level of proficiency in balance, mobility and dexterity is the equivalent of a 12th Grade Student, as determined by unbiased, standardized testing and EEG Brain Mapping or quantitative EEG (QEEG), esp. regarding skills needed for transition and driving without her brain going into sleep mode.

16. Order D214 to reimburse Plaintiffs for the Student to receive 100 more hours of LMB tutoring in reading by completing the Seeing Stars and Visualization & Verbalization programs, and then 90 "application" hours in writing (3 hrs/week for 30 weeks), until her level of proficiency is the equivalent of a 12th Grade level, as recommended by the LMB progress reports.

16. Find & declare the D&O erred in not providing reimbursement as part of compensatory education to Plaintiffs for all roundtrip travel of Amanda to obtain services ordered reimbursed.

17. Order D214 to reimburse the Plaintiffs for roundtrip travel expenses to each session of service provision ordered in the D&O and here, at the current IRS mileage rate, and tolls or pay in advance for cab transport at the Plaintiffs' option.

18. Order D214 to pay all reimbursements one month in advance of service provision for the coming month to prevent the Plaintiffs from incurring costs for obtaining credit to pay for services to be reimbursed.

19. Find that D214 violated the Plaintiffs' procedural safeguards under IDEA and state law by not including the 2 year statute of limitations in its Notice of Procedural Safeguards to the Parents, and by failing to provide Prior Written Notice of its proposals and refusals prior to implementation of its evaluations and IEPs for Amanda.

20. Find & declare that D214's conduct constituted "willfull disregard" of federal and/or state educational regulations or statutes regarding Amanda to her detriment, pursuant to the Illinois School Code § 105 ILCS 5/14-8.02(i) by misrepresenting Amanda's motor deficits and OT/PT services needs to the Parents and the Student's IEP Team.

21. Award reimbursement for costs, including reasonable attorneys' fees, incurred in connection with the due process proceeding, plus prejudgment interest, and fees in connection with this federal court action in an amount as determined in the discretion of this Court as authorized by 20 USC § 1415(i)(3)(B), and pursuant to § 105 ILCS 5/14-8.02(i).

22. For such other and further relief as the Court deems just and proper.

Dated: January 28, 2016

Respectfully submitted,

/s/ Sheri Lynn Bianchin, Esq.
Co-Counsel for Plaintiffs
Voice-Advocacy
7302 Lakeside Ct.
Frankfort, IL 60423
ARDC No. 6208619
(708)717-8393
sher_law@sbcglobal.net
Fax: 888.985.4567

/s/Joseph Daniel Thomas
Attorney at Law
ARDC No. 6212202
Lead Counsel for Plaintiffs
(Pending Pro Hac Vice Approval)
26034 S. Locust Pl.
Monee, IL 60449-8082
312.296.8203
Fax: 800.882.3714

**Exhibit List**

**Exhibit 1, Final Determination & Order with Admitted Exhibit List & Clarification, ISBE Case No. 2015-0466**